The substance of the complaint is as follows:
The plaintiff alleged that, in 1883, the defendant Harris and wife executed to him a mortgage upon certain lands; that, in 1884, the defendant J. S. Fisher purchased the equity of redemption, and, in order to perfect his title, it was agreed that plaintiff should sell the land by virtue of the power vested in him by the mortgage; that said Fisher was to bid off the land at the sum of $3,660, the amount due upon the mortgage; that the said sum was to be paid plaintiff after the sale in cash, and, upon the payment of said amount, the plaintiff was to cancel his mortgage and execute title to said Fisher, pursuant to the power in the mortgage; that plaintiff executed said deed, but it was delivered (215) to Fisher without his authority, who put it in the possession of the defendants Hill Fetzer, who now hold the same; the plaintiff alleged that he has received partial payment on the debt, but did not know at the time he received such payments that the said deed had been delivered. He further alleged that he has never canceled the mortgage. He asks that the land be sold, and that he be paid the balance due him, and other relief. The defendants denied these allegations.
The plaintiff tendered issues; the defendants objected, and the court submitted the following, to which the defendants excepted:
I. Did Ervin and Charles J. Harris execute the mortgage, as charged in paragraph 1 of complaint?
II. Did the defendant J. S. Fisher agree to bid off said land at the sale at the price of $3,660, to be paid in cash to said Propst, and to be applied to the satisfaction of the notes or bonds due by said Ervin and Charles J. Harris to said Propst, and was the payment of said bid to be a condition precedent to the conveying of any title by said Propst to said Fisher, as charged in paragraph 2 of the complaint?
III. Did the defendant J. S. Fisher bid off said land at said sale in pursuance of said agreement?
IV. Did the plaintiff Propst, in expectation of a compliance by said Fisher with his contract, cause a deed for the land, bearing date 20 December, 1884, to be prepared, and was said deed delivered to said Fisher without the knowledge, consent or authority of said Propst, as charged in complaint?
To all these issues the jury responded in the affirmative.
The case had been, theretofore, referred to the clerk, by consent, to ascertain the amount of unpaid purchase money. It was agreed to *Page 177 
take the clerk's finding, and that no issue was necessary as to the (216) amount which was due from J. S. Fisher to plaintiff of the purchase money.
The plaintiff offered in evidence a mortgage given by C. J. and E. Harris, conveying the lands mentioned in complaint to plaintiff, to secure certain notes therein mentioned.
The defendants objected. Objection overruled and defendants excepted.
Plaintiff next offered in evidence a deed from E. and C. J. Harris to J. S. Fisher.
Defendants objected. Objection overruled and defendants excepted.
The plaintiff next offered as a witness W. G. Means, Esq., who stated that he was a practicing attorney; that, as such, the plaintiff spoke to him in the latter part of the year 1884 to collect or foreclose the mortgage of E. and C. J. Harris; that he drew the advertisement of sale, to take place 20 December, 1884; that plaintiff and J. S. Fisher had a conversation in presence of witness in J. S. Fisher's office.
The defendants objected to the witness testifying as to any transaction or communication had with J. S. Fisher, upon the ground that J. S. Fisher is now a lunatic. (Plaintiff admitted that J. S. Fisher is a lunatic.)
The witness, upon preliminary examination, stated that he did not now, nor at any other time, have any interest in this action, or in its result, and that his fee for services was in no way dependent upon this action or its result, when the court overruled defendants' objection and defendants excepted.
The witness stated that he was the attorney who was spoken to by Propst to foreclose or collect the Harris mortgage. That, in conversation between Propst and Fisher, in the office of the latter, on 19 December, 1884, Fisher then and there agreed to bid off this land the next day for $3,660, which sum was about the amount due on the Harris notes, and which had been assigned to plaintiff. Fisher (217) expressed some doubt about getting a complete title, because of the length of time of advertisement of sale, and said to Propst that if the Harris boys would give him a deed for their rights he would buy the land the next day under the sale as advertised. C. J. Harris was then sent for, and he came in the office and was told what had taken place, and the matter was fully explained and talked over, and it was agreed that this course be pursued.
The deed from the Harris boys to Fisher, which was read in evidence, was then written, and it was taken by C. J. Harris to Ervin, his brother, to sign. He brought it back the following morning signed. At the *Page 178 
same time the deed from Propst to Fisher was drafted. Both deeds were prepared and left with witness after execution.
The sale took place on the 20th. There was only one bid made, and that was made by Fisher in the sum of three thousand six hundred and sixty dollars. Fisher stated to Propst in his office the evening before that he would pay $3,660 in cash. On the 20th I called out at sale the terms as cash. When Fisher bid off the land I went to my office and got the deed from Propst to Fisher, that was prepared the day before and left in my possession, with a memorandum of boundaries, and the deed from the Harris boys to Fisher, from which I had gotten the boundaries, together with some other papers I had in my possession, and gave them all to Fisher, telling him I had to leave town and for him to give them to Propst. Propst was at the sale, and when I got back to Fisher's office Propst was not there, and I had to leave town, and told Fisher so, and I gave him the deed and other papers, with instructions to hand them to Propst. I had no authority whatever to deliver the deed, and no instructions from Propst to do so.
(218) Upon cross-examination, witness stated that he was not Propst's regular attorney; that Propst employed him in this matter to draw up the deeds and write out the advertisement in legal form. "On the evening of the 19th, Propst left the deed in my office, and I gave it to Fisher the next day, as I have stated."
There was other evidence tending to show that the deed was delivered to Fisher by Means without authority or knowledge of Propst, and that Propst was never informed that the deed had been delivered to Fisher until he saw it registered, near three years afterwards; but as there was no exception to the other evidence and no exception to the judge's charge it is not material to be stated.
The defendants introduced no witnesses. There was a verdict for plaintiff.
The court gave judgment upon the issues, from which defendants appealed.
The errors assigned relate only to the trial of the issues.
1. We are unable to appreciate the objection of the defendant to the issues which his Honor submitted to the jury. They fairly presented the questions raised upon the pleadings, and we are, therefore, of the opinion that the exceptions of the defendants, in this respect, are without merit. *Page 179 
2. Neither can we find any error in the admission of the mortgage executed by Harris and wife to the plaintiff, and the deed conveying their equity of redemption to Fisher. The mortgage was an essential part of plaintiff's case, as it was under that instrument alone that he acquired any interest in the property. The deed to Fisher was a part of the transaction in reference to the sale of the land, and (219) was clearly relevant.
3. The remaining exception relates to the competency of the witness Means. The defendant Fisher is now a lunatic, and is represented in this action by his guardian. The witness never had any interest in the land in controversy; he simply acted as the attorney of the plaintiff, and he is not affected in any way by the result of this suit. Unquestionably, he is not precluded from testifying under sec. 590 of the Code.
Affirmed.
Cited: Hall v. Holloman, 136 N.C. 36.